IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAYMOND D. HURT | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-14-873 |
| FANN, et al. | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Pending is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 20. Plaintiff opposes the motion with a Cross Motion for Summary Judgment. ECF No. 22. A hearing in this matter is unnecessary. *See* Local Rule 105.6 (D. Md. 2014). Defendants' motion, construed as a Motion for Summary Judgment, shall be granted for the reasons stated below.

## Background

Plaintiff, an inmate incarcerated at North Branch Correctional Institution ("NBCI"), claims that when he was moved to housing unit C-1 on February 25, 2013, a campaign of harassment was launched against him by the officers who are regularly assigned there. Specifically, he claims that from March 1, 2013 through April 24, 2013, officers have denied him the ability to attend medical sick calls, dental appointments, and disciplinary hearings by erroneously claiming that he refused to attend. ECF No. 1 at p. 2.

Plaintiff alleges that during the time-frame referenced he was suffering objectively serious medical needs inasmuch as he was over 30 pounds underweight and severely emaciated. He states that Defendants Fann, Grub, Passman, Rounds, Sr., and Conrad were aware of his medical needs, yet they denied him the opportunity to see medical staff for care. Plaintiff also claims that Warden Shearin and Lt. Wilt were also aware of his medical needs as they "opted to disregard . . . [an administrative remedy request or ARP] ARP-NBCI-0918-13 without any form

of investigation whatsoever." *Id*. at p. 3.  Rather, Plaintiff claims the only response provided was that the officer denied the allegation that he was improperly denied the opportunity to see medical staff.  *Id*.

Plaintiff also alleges that officers have engaged in interception of his legal mail, denying him the opportunity to appeal the dismissal of ARP-NBCI-0918-13 to the Commissioner of Correction.  He alleges that on May 12, 2013, Officer Rounds Jr. was observed at 10:00 p.m. removing Plaintiff's outgoing mail from his cell door and "subsequently pilfering it."  ECF No. 1 at p. 3.

Plaintiff claims that on October 2, 2013, he received a dismissal of his appeal to the Inmate Grievance Office ("IGO") for failure properly to exhaust the ARP through appeal to the Commissioner.  *Id*.; *see also* ECF No. 1-1 at pp. 2 – 3.  Plaintiff prepared a petition to appeal the IGO's dismissal to the Circuit Court for Allegany County which he placed in his cell door for mail pick-up.  He claims that at 10:00 p.m. he observed Officer Preston remove the legal mail from his doorway and "pilfering it."  ECF No. 1 at p. 3.

On October 8, 2013, Plaintiff states that he handed Sgt. Ferris an amended petition for delivery to the Circuit Court for Allegany County regarding the appeal of the IGO's dismissal of ARP-NBCI-0918-13, along with other legal mail.  Plaintiff claims that Ferris did not deliver the mail to the mailbox and that Ferris can be observed pilfering his legal mail on the video monitors for the tier.  *Id*.

Plaintiff filed an ARP regarding Ferris's conduct, ARP-NBCI-4115-13.  He claims that instead of investigating the allegation, Shearin simply relied on Ferris' denial of the conduct. Plaintiff states that he hand-delivered an appeal of Shearin's denial to the housing unit mailbox on January 14, 2014, and asserts that if it did not reach its intended destination, then the mail room staff is also guilty of interfering with the delivery of his legal mail.  ECF No. 1 at p. 3.

2

Plaintiff asserts that the Warden's response to ARP-NBCI-4305-13 stating that he refused medical treatment on December 18, 19, and 20, 2013, is fraudulent. He asserts that he was never approached by an officer on these dates for purposes of securing a "refusal" to attend the sick call. *Id*. at p. 4; *see also* ECF No. 1-1 at p. 5. Plaintiff further states that the claim that he refused sick calls on January 9, and 25, 2014, is also incorrect and that he was never approached by a correctional officer to obtain a refusal. In addition, Plaintiff claims that he turned in another sick call slip on January 30, 2014, and was never called to attend sick call. ECF No. 1 at p. 4. He asserts that this denial of medical care is "especially egregious for the reason that medical personnel are still contending that Plaintiff still weighs 140 pounds." *Id*. Plaintiff does not state why this belief by medical personnel is harmful or incorrect.

### Standard of Review

<u>Summary Judgment</u>

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

3

The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Eighth Amendment Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, Plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) quoting *Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

In medical records submitted by Defendants, Plaintiff is portrayed as hostile when he is seen by medical staff. ECF No. 20 at Ex. 2. On March 13, 2013, Plaintiff was seen for his complaint of a headache which he informed the nurse was gone, but he claimed he was "still being poisoned." *Id*. at p. 3. The sick call was ended when Plaintiff called the nurse "stupid." *Id*. On April 5, 2013, Plaintiff was seen for "multiple complaints" and it is noted that he was "unable to specify" what his medical complaint was about. *Id*. at p. 11. Additionally, Plaintiff is described as distracted, engaging in conversation with security staff and in no apparent distress. *Id*. On May 15, 2013, Plaintiff was seen for a complaint of an injury to his left forearm. *Id*. at p. 26. After allowing the nurse to take his vital signs and signing the co-pay log, Plaintiff "started ranting that he had placed other sick calls that had been stolen" and stated he did not want to be seen. *Id*. Plaintiff signed a release and left the medical room. *Id*.

5

On May 28, 2013, Plaintiff was seen after he reported nose bleeds and pelvic discomfort when urinating. ECF No. 20 at Ex. 2, p. 32. Plaintiff then admitted to the nurse he was not having nose bleeds and that he had falsely reported pelvic discomfort because he wanted a urinalysis to determine if it contained evidence of poison. *Id*. Despite Plaintiff's initial dishonesty, a urinalysis was ordered.[1]

While Plaintiff is a "chronic care" patient because he has hepatitis C, there appears to be no other serious illness which Defendants, who are not medically trained, would have reasonably discerned from Plaintiff's appearance or symptoms. Moreover, the encounters Plaintiff had with medical staff do not indicate that Plaintiff had a serious concern regarding his health; rather, his concern appears to have been focused on his belief that his sick call slips were not being processed properly. In his Cross Motion for Summary Judgment, Plaintiff does not elucidate the alleged serious medical need for which he required medical attention, nor does he cite any injury resulting from the alleged fraudulently prepared releases of responsibility ("ROR") forms. ECF No. 22. Even assuming that some of the ROR forms were erroneously submitted, the fact remains that Plaintiff suffered no injury as a result and Defendants were not deliberately indifferent to an obvious serious medical need. To the extent that Plaintiff was not seen by medical staff in response to every sick call submitted or within a time period suitable to Plaintiff, ordinary delays take place where requests are not of an emergency nature. Additionally, if sick call slips submitted are repetitive it is unnecessary for Plaintiff to be seen for each request.

### Denial of Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

---

[1] The results of that test are not a part of this record.

>*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "non-frivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 352-352.

In *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), the Court characterized access-to-courts claims as being in one of two categories. *Id* at 413. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arise when a Plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id*. at 1209. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress'" in the courts. *Id*. (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).

Whether the claim is forward or backward looking, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a non-frivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415.

From January 22, 2013 through August 6, 2014, Plaintiff filed 48[2] ARPs. ECF No. 20 at Ex. 14. On August 1, 2013, Plaintiff claimed his mail was being stolen and averred he knew this because his parents were not receiving the mail he sent. *Id*. at p. 2. Plaintiff was asked to resubmit the ARP, but did so two months after the resubmission was due. *Id*. There are no ARPs noted regarding a missed opportunity to appeal the denial of his ARP to the Commissioner, the IGO, or to the Circuit Court for Allegany County. The only ARP complaints noted regarding court-related matters reference submission of a prisoner account statement for purposes of a Motion to Proceed in Forma Pauperis. *Id*.

To prevail on a claim he has been denied meaningful access to the courts, Plaintiff must allege more than a missed deadline or opportunity to file an action in court. Plaintiff must establish that his underlying claim was "non-frivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. at 415. "[T]he predicate claim [must] be described well enough to apply the 'non-frivolous' test and to show the 'arguable' nature of the underlying claim is more than hope." *Id*.

---

[2] He e-filed three additional ARPs in the two months prior to January of 2013. ECF No. 20 at Ex. 14, p. 1. The index provided indicates Plaintiff has filed a total of 122 ARPs, but it does not specify the time frame for that total. *Id*. at p. 3.

at 416 (footnote omitted). A prisoner's right to access the courts does not include the right to present frivolous claims. *See Lewis v. Casey*, 518 U.S. at 353 & n. 3.

The crux of Plaintiff's claim regarding the appeal of the warden's denial of his ARP was that the video surveillance footage from the housing unit tier was not viewed as part of the investigation to determine whether his claims were true. ECF No. 1 and 22. The assertion that video surveillance was not viewed is not based on a claim that procedural rules were violated or that Plaintiff's rights were somehow infringed when his preferred investigatory technique was not adopted. Prison officials are free to make credibility determinations when investigating complaints. Thus, Plaintiff's loss of an ability to appeal the denial of his ARP did not infringe upon a constitutionally protected right of access to the courts.

<u>Due Process Claim</u>

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (*citing Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-571. There is no constitutional right to confront and cross-examine witnesses or to retain

and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004).

As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 323 n. 5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

To the extent Plaintiff's Complaint may be read to raise a violation of due process with regard to the denial of his attendance at a disciplinary hearing, his claim fails. Defendants provided documentation that Plaintiff was not brought to the hearing room because his behavior on the tier indicated he would present a threat to all those present in the hearing room. ECF No. 20 at Ex. 3. Plaintiff was charged on March 25, 2013, with throwing "an unknown liquid substance that smelled of urine and feces" on another inmate who was working on the tier. *Id*. at p. 2. "After throwing the first cup . . . [Plaintiff] attempted to dip another cup in his toilet." *Id*. The reporting officer, R. Hesselbach, then applied a burst of pepper spray at Plaintiff to prevent a

further assault and Plaintiff grabbed his mattress, jammed it against the feed up slot, and pinned Hesselbach's right hand in the slot.[3] *Id.*

On April 9, 2013, the date of Plaintiff's hearing for the infraction, it is noted that he was in his cell "banging extremely loud and hard on his cell door" and that he had been "loud off and on all day, by yelling at the officers and banging on his door." ECF No. 20 at Ex. 3, p. 6. Based on the reporting officer's observations, it was determined that Plaintiff would pose a threat to staff and others if he were removed from his cell to be escorted to the hearing room. *Id.* The disciplinary hearing was held in absentia and Plaintiff was found guilty based on the officer's notice of infraction. *Id.* at p. 8.

In his Cross-Motion for Summary Judgment, Plaintiff does not deny engaging in the described boisterous behavior on April 9, 2013, nor does he assert his due process rights were abridged in any meaningful way; rather, he takes issue with Defendants' assertion that he refused to sign the refusal. ECF No. 22. There is no allegation that Plaintiff had evidence he was denied the opportunity to present at the disciplinary hearing because he was not permitted to go. Indeed, he does not dispute his guilt for the charges asserted against him. *Id.*

Thus, Defendants are entitled to summary judgment in their favor.

Date:   March 16, 2015                 _____/s/_____
                                        DEBORAH K. CHASANOW
                                        United States District Judge

---

[3] Plaintiff was charged with violating Rules 100 (engaging in a disruptive act), 102 (commit assault or battery on an inmate), 116 (possess, misuse, tamper with, damage, or destroy security equipment or property), and 312 (interfere with or resist the performance of staff duties). ECF No. 20 at Ex. 3, p. 2. On March 29, 2013, a charge for violating Rule 101 (commit assault or batter on staff) was added to the infraction. *Id.* at p. 5.